UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID FINLEY, JR.                          CIVIL ACTION

VERSUS                                     NO. 12-726

FLORIDA PARISH JUVENILE          MAGISTRATE JUDGE
DETENTION CENTER                      JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

This is an employment discrimination case brought by plaintiff, David Finley, Jr., an African-American man, against his former employer, Florida Parish Juvenile Detention Center (the "Center"). Finley's pro se complaint alleges five (5) numbered causes of action: (1) the Center discriminated against him in violation of Title VII and 42 U.S.C. § 1981 when it terminated his employment based on his race and/or gender; (2) defendant's disciplinary system had a racially discriminatory impact on African-American employees, including himself, in violation of Title VII and 42 U.S.C. § 1981; (3) defendant's written and oral policies created an employment contract with Finley, which the Center breached by terminating him without cause; (4) intentional infliction of emotional distress; and (5) defamation. Complaint, Record Doc. No. 2, at pp. 4-10. Finley also claims that defendant's wrongful conduct denied him due process. Id. at p. 2.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 13.

The Center filed a motion for summary judgment, which addresses only plaintiff's Title VII and Section 1981 claims of intentionally discriminatory termination.  The motion makes no argument as to the four other claims asserted by plaintiff.  Defendant's memorandum in support, Record Doc. No. 21-1 at p. 5; defendant's reply memorandum, Record Doc. No. 36 at p.1 n.1.  The Center does not make any argument regarding plaintiff's allegations of disparate impact discrimination, which is analyzed under a different standard than intentionally discriminatory treatment.

Defendant's motion is supported by the affidavit of its Executive Director, Tom Jarlock, Record Doc. No. 21-4, and three attached "Unusual Occurrence Reports," which were completed in October 2011 by defendant's employees, Joy Chauvin, Donald Carter and Kelsie McDonald, Defendant's Exhs. A, B and C, respectively, Record Doc. No. 21-4;[1] and by the affidavits of Chauvin and Carter.  Record Doc. No. 21-5.  The Center argues that, even if Finley could establish a prima facie case of intentional racial or gender discrimination, he has no evidence to rebut defendant's proffered legitimate,

_____

[1]Defendant's Exhibits A, B and C in Record Doc. No. 21-4 are copies of handwritten documents that were attached to plaintiff's complaint.  Record Doc. No. 2-1.  The copies attached to plaintiff's complaint are more legible than the recopied versions attached to defendant's motion, so I cite to these three exhibits as being in Record Doc. No. 2-1, rather than in Record Doc. No. 21-4.

2

nondiscriminatory reasons for terminating him.  The termination was based on Jarlock's investigation and findings concerning an accusation by a female employee, Kelsie McDonald, that Finley had made inappropriate, sexually oriented  remarks to her in the workplace.

Plaintiff, who is now represented by counsel, filed a timely opposition memorandum.  Record Doc. No. 31.  He argues that summary judgment is not available because McDonald's credibility in accusing him of sexual harassment is suspect.  He denied at the time of the incident and continues to deny that he made the remarks of which McDonald accused him.  He asserts that there are gaps or inconsistencies in the events described in the contemporaneous Unusual Occurrence Reports completed by McDonald and the two supervisors, Carter and Chauvin, to whom she reported the incident.  Finley contends that the statements attributed to McDonald by Carter and Chauvin in their recent affidavits are inadmissible hearsay that cannot support summary judgment and that, in the absence of an affidavit from McDonald herself, defendant's evidence is insufficient to carry its burden.

The only evidence that Finley has submitted is his own affidavit, Record Doc. No. 31-1, which does not contain any factual allegations, but which purports to verify the allegations of fact in his complaint and in a typed, unsigned, unsworn statement attached

to the complaint.  The date of the statement is unknown.[2]  The statement appears to contain plaintiff's version of the events of October 13, 2011 regarding McDonald and their aftermath, including the termination of his employment.

Defendant received leave to file a reply memorandum.  Record Doc. Nos. 33, 35, 36.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion, which in fact is a motion for partial summary judgment, is **GRANTED** as to plaintiff's disparate treatment claims under Title VII and 42 U.S.C. § 1981 only.  Plaintiff has offered <u>no</u> competent evidence sufficient to create a triable issue of fact as to these claims on which he bears the burden of proof at trial, so that summary judgment under the <u>Celotex</u> standard described below must be entered against him.

I.     <u>THE UNDISPUTED FACTS</u>

The following facts are established by defendant's competent summary judgment evidence and are accepted as undisputed for purposes of the pending motion.

Jarlock conducted an investigation based on three Unusual Occurrence Reports he received concerning an incident involving McDonald during a training session conducted by Finley on October 13, 2011.  All of the Unusual Occurrence Reports are

---

[2]Although there is a time and date stamp at the top of the pages, which appears to have been inserted by a fax machine, the date is October 19, <u>2009</u>, two years <u>before</u> the incidents in question.

contemporaneously signed and dated by the employees who wrote them, by the Director

of Operations and by the Executive Director.

According to McDonald's Unusual Occurrence Report dated October 20, 2011,

McDonald reported to her supervisor, Carter, on the day of the training that Finley had

told her a story during the training about a past sexual encounter he had experienced.

McDonald stated in her Unusual Occurrence Report:

> This is not the first time Finley has made nuances of sexual nature or said
> things to me about other women that I consider to be inappropriate talk for
> the workplace, and in my opinion, anytime.   After the incident on
> October 13, 2011, I reported what happened to my supervisor, Donald
> Carter.

Record Doc. No. 2-1 at p. 13.

Carter's Unusual Occurrence Report, also dated October 20, 2011, relates that

McDonald approached him during a break in the training "and stated that Mr. Finley had

said some things of a sexual nature that made her feel uncomfortable."  Carter spoke to

Finley immediately, telling him that "McDonald had reported to me that he had said

some things of a sexual nature that made her feel uncomfortable."  Id. at p. 12.  Finley

replied that McDonald must have misunderstood what he said.  Finley and Carter then

met with "McDonald outside the training room where Mr. Finley . . . apologized for his

actions" and both parties continued with the training.  Id.  Carter notified the Operations

Manager of the incident on October 19, 2011.  Id. at p. 11.  Carter's affidavit submitted

5

in support of the Center's motion confirms that the events recorded in his Unusual Occurrence Report occurred as he stated therein.  Record Doc. No. 21-6.

Chauvin, in her Unusual Occurrence Report, dated October 25, 2011, said that McDonald told her on October 21 about an incident that occurred with Finley during recent training.  McDonald told Chauvin that Finley had "leaned over to her and whispered to her about a situation that occurred at a prior conference," at which Finley got drunk and went to the hotel room of two women. Id. at p. 13.  According to Chauvin, McDonald said that Finley "proceeded to tell her details of the night.  [McDonald] said this made her extremely uncomfortable and that he might be suggesting something about the upcoming LJDA conference.  She excused herself to get away from Mr. Finley" and then told Carter what had happened.  Id.

Chauvin's affidavit submitted in support of the Center's motion states that she is an administrative employee of the Center and that she is friendly with McDonald, who is a former employee.  Record Doc. No. 21-5.  Chauvin confirms in her affidavit that the events documented in her Unusual Occurrence Report occurred while she was a guest in McDonald's house on October 21, 2011.  Chauvin explains that, at the time of the incident, McDonald was scheduled to attend an out-of-town conference of the Louisiana Juvenile Detention Association with Finley and other employees of the Center, and that this fact

6

> was the source of Ms. McDonald's discomfort with Finely's [sic] inappropriate conversation. . . . Ms. McDonald was under the impression that Finley's purpose in inappropriately describing the matters which occurred at a previous conference was to suggest to Ms. McDonald that she participate in the kinds of sexual activities which he had described to her.

Id. at ¶¶ 7-8.  Chauvin further states that "Finley's behavior, as related to her by Ms. McDonald, is in direct violation of the Center's policies and procedures as they prohibit the kinds of sexually explicit conversation in which Finley engaged."  Id. at ¶ 10.

Jarlock states in his affidavit that the Center terminated Finley's employment after Jarlock "had the matter investigated and determined that Ms. McDonald's complaints had merit."  Jarlock affidavit, Record Doc. No. 21-4, at ¶ 16.  Jarlock determined that Finley had

> violated numerous of the Center's rules and regulation [sic] regarding appropriate on-the-job behavior.  Specifically, Finley violated regulations which prohibit the making of sexually charged remarks to co-employees during working hours.  Moreover, he violated rules and policies prohibiting the making of offensive remarks which interfere with a co-employee's performance of her work.

Id. at ¶ 16.  Jarlock states that Finley was fired on October 27, 2011 for these reasons, not "because of any gender or racial reasons."  Id. at ¶ 17.

Plaintiff, in his complaint and his statement attached to the complaint, denies that he made the remarks of which McDonald accused him.  He provides his conflicting version of what he said to her and what happened thereafter at work.  Finley asserts that McDonald had a motive to lie to cover up her own work performance problems, about

7

which he and other supervisors had counseled her.  He also alleges that the Center's investigation of McDonald's complaint revealed that she had previously made exaggerated and false reports about other co-workers.

II.      ANALYSIS

      A.      Standard of Review for Summary Judgment Motions

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

8

(3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.

(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the

essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint.""  Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

      B.    Defendant's Evidence Is Not Hearsay

Finley argues in his opposition that the affidavits of Chauvin and Carter, to the extent they recount what McDonald said to these witnesses in October 2011, and the three Unusual Occurrence Reports that informed Jarlock's investigation are all unreliable, inadmissible hearsay statements. However, Jarlock's affidavit establishes that the Unusual Occurrence Reports fall under the business records exception to the hearsay rule and are admissible for that reason. Fed. R. Evid. 803(6); see La Day v. Catalyst Tech., Inc., 302 F.3d 474, 481 n.7 (5th Cir. 2002) (notes of manager who investigated plaintiff's complaint of sexual harassment were admissible under Rule 803(6), when notes included notes of statements by employees and were kept as part of manager's investigation); Gardner v. Chevron U.S.A., Inc., 675 F.2d 658, 660 (5th Cir. 1982) (foreman's reports that "contained factual observations which he made and those which were reported to him by Chevron employees" and contained "his opinions concerning the possible causes of the fire" at issue were admissible).

In addition, the Unusual Occurrence Reports and Chauvin's and Carter's affidavits in this case are not hearsay because they are not being offered for the truth of

McDonald's statements.   Rather, defendant offers these documents to show what information Jarlock had before him when he investigated McDonald's accusation and decided to terminate plaintiff's employment based on that investigation.  See Royall v. Nat'l Ass'n of Letter Carriers, 548 F.3d 137, 145 (D.C. Cir. 2008) (quotation omitted) (citing Fed. R. Evid. 801(c)) (Plaintiff's "contention that sworn deposition statements recounting complaints [are] hearsay fails because the Union officers' statements were offered to illuminate their motives and actions as supervisors, not to show that the complaints were valid."); Haughton v. Orchid Automation, 206 F. App'x 524, 532 (6th Cir. 2006) (citing King v. Tecumseh Pub. Sch., 229 F.3d 1152, 2000 WL 1256899, at *5 (6th Cir. July 13, 2000)) ("[W]itness statements gathered by Defendant during its investigation were properly admissible and did not constitute hearsay evidence. . . . Defendant offered the statements not to prove their truth . . . but to demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff."); Wallace v. Tex. Tech. Univ., 80 F.3d 1042, 1048 n.4 (5th Cir. 1996) (Head coach's affidavit, which contained information gathered from other persons about assistant coach's misconduct, "does not offer those incidents for the truth of the events, but rather, he offers his belief that these incidents occurred as proof of his motive for failing to renew [assistant coach's] contract."); Cantu v. Vitol, Inc., No. H-09-0576, 2011 WL 486289, at *2 n.2 (S.D. Tex. Feb. 7, 2011) (E-mails from plaintiff's supervisor to defendant's operations

12

manager about plaintiff's work performance problems "are not offered . . . for the truth of their contents.  Instead, they are offered to show the supervisors' state of mind" leading up to firing plaintiff.).

C.    Plaintiff Has Failed to Produce Evidence to Rebut Defendant's Reasons

The affidavits and exhibits filed by the Center satisfy its burden to produce evidence that its employment decision was based on legitimate nondiscriminatory reasons.  Finley has failed to rebut that evidence in any way.

Plaintiff's race and gender discrimination claims under Title VII and his race discrimination claim under Section 1981[3] are all analyzed under the burden-shifting standard established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Turner v. Kan. City S. Ry., 675 F.3d 887, 891 n.2 (5th Cir. 2012).

> The first step of the McDonnell Douglas analysis requires [t]he plaintiff [to] establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor.  If the plaintiff establishes a prima facie case, we proceed to the next stage of the analysis, where the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. If the defendant carries its burden, the analysis moves to the third McDonnell Douglas step, where [t]he burden . . . shifts back to the plaintiff

---

[3]Section 1981 applies only to claims of race discrimination and does not apply to claims of gender discrimination.  Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 490 n.4 (5th Cir. 2011); Daigle v. Gulf State Utils. Co., 794 F.2d 974, 980 (5th Cir. 1986); Bobo v. ITT, 662 F.2d 340, 344-45 (5th Cir. 1981).

13

to prove that the defendant's proffered reasons were a pretext for discrimination.

Id. at 892 (quotations and citations omitted).

The Center denies that Finley can make out a prima facie case of race or gender discrimination, but does not argue any evidence at that analytical first step.  Instead, defendant focuses on its legitimate, nondiscriminatory reasons for terminating plaintiff's employment.  "Defendant's burden is one of production, not persuasion . . . ."  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000) (quotation omitted).  This burden therefore "involv[es] no credibility assessments."  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

The employer "'need not prove that it was actually motivated by its proffered reason.' . . . .  'The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be.'"  Joseph v. City of Dallas, 277 F. App'x 436, 439 (5th Cir. 2008) (quoting Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993)); accord Turner, 675 F.3d at 900.  Thus, the Center must merely set forth, through admissible evidence, "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (emphasis in original).

14

The Center has met its burden of production.  The affidavits of Jarlock, Carter and Chauvin and the Unusual Occurrence Reports establish that Jarlock was faced with a complaint by McDonald that Finley had told her an inappropriate story in the workplace about a sexual encounter, which made her uncomfortable, and that this was not the first time Finley had made remarks of a sexual nature to McDonald or that were otherwise inappropriate for the workplace.  Plaintiff's own statement of facts attached to his complaint confirms that McDonald promptly complained to Carter, who immediately spoke to Finley, and that Finley apologized to McDonald if any of his remarks had made her uncomfortable.  Plaintiff also acknowledges that an investigation ensued during which he was asked to submit his own written version of what had occurred.  Jarlock concluded, based on his investigation, that Finley had violated company rules against making sexually oriented remarks to co-employees during working hours and making offensive remarks which interfere with a co-employee's performance of her work.  These articulated reasons are legitimate, nondiscriminatory reasons for terminating plaintiff's employment.

Therefore, the burden of producing evidence to rebut those reasons shifts to Finley.  "The plaintiff's 'ultimate burden' is to 'persuad[e] the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Thus, in response to defendant's evidence, Finley

must produce competent evidence sufficient to create a material fact issue "that the actual

decisionmaker was motivated by race [or gender] in taking the adverse employment

action." <u>Turner</u>, 675 F.3d at 902.

Plaintiff has produced <u>no evidence</u> to satisfy his burden.  In his opposition, his

only argument is to dispute the credibility of McDonald's accusations.  However, the

truth or falsity of her allegations and her credibility in complaining to the Center's

management are not at issue in the instant motion.

> The degree of impeachability of [defendant's] evidence at this stage is
> irrelevant.  <u>St. Mary's</u> directs us to avoid making any credibility
> determinations at this stage because "the burden-of-production
> determination necessarily <u>precedes</u> the credibility-assessment stage."  The
> employer need only articulate a lawful reason, regardless of what its
> persuasiveness may or may not be.

<u>Bodenheimer</u>, 5 F.3d at (quoting <u>St. Mary's</u>, 509 U.S. at 509).

Finley has not produced any evidence to show that any similarly situated white or

female employee was treated more favorably than he, which is an essential element of

a disparate treatment discrimination case.  <u>Berquist v. Wash. Mut. Bank</u>, 500 F.3d 344,

353 (5th Cir. 2007) (quoting <u>Perez v. Tex. Dep't of Crim. Justice</u>, 395 F.3d 206, 210 (5th

Cir. 2004)).

> As an initial matter, there is no evidence in the record that casts any shadow
> of possible pretext. . . .  In a case in which the employer has articulated a
> rational justification for terminating an employee, and the facts supporting
> that justification are not seriously disputed, the task of proving pretext
> becomes quite difficult. . . .  Without evidence of disparate treatment, it is

16

> difficult to maintain that a straightforward application of workplace policies
> and procedures was pretextual.

Chaney v. New Orleans Pub. Facility Mgmt., 179 F.3d 164, 167-68 (5th Cir. 1999).

Moreover, "anti-discrimination laws are not vehicles for judicial second-guessing of business decisions." Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001) (quoting Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 281 (5th Cir. 1999)); accord Moss v. BMC Software, Inc., 610 F.3d 917, 926 (5th Cir. 2010). It is immaterial whether the Center's decision may have been based on incorrect facts, so long as its decision was not motivated by discriminatory or retaliatory animus. Id.; Mato, 267 F.3d at 452. Thus, the Fifth Circuit has "emphasize[d] . . . that a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith." Cervantez v. KMGP Servs. Co., 349 F. App'x 4, 10 (5th Cir. 2009) (citing Waggoner v. City of Garland, 987 F.2d 1160, 21 1165 (5th Cir. 1993)). "Even if evidence suggests that a decision was wrong, [the court] will not substitute our judgment . . . for the employer's business judgment." Scott v. Univ. of Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).

Finlay has failed to raise a genuine dispute of material fact regarding the Center's legitimate reasons for terminating his employment. Accordingly, defendant is entitled to summary judgment in its favor as a matter of law on plaintiff's claims of racially

disparate treatment under Title VII and Section 1981 and of gender-based disparate treatment under Title VII.

<u>CONCLUSION</u>

For all of the foregoing reasons, **IT IS ORDERED** that defendant's motion for partial summary judgment is GRANTED and that plaintiff's disparate treatment claims under Title VII and 42 U.S.C. § 1981 are DISMISSED WITH PREJUDICE.  Plaintiff's claims of racially discriminatory impact, breach of contract, intentional infliction of emotional distress and defamation remain to be resolved.

New Orleans, Louisiana, this _____5th_____ day of February, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE