UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID FINLEY, JR.                         CIVIL ACTION

VERSUS                                    NO. 12-726

FLORIDA PARISH JUVENILE                   MAGISTRATE JUDGE
DETENTION CENTER                          JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

This is an employment discrimination case brought by plaintiff, David Finley, Jr.,

an African-American, against his former employer, Florida Parish Juvenile Detention

Center (the "Center"). Finley's pro se complaint alleged four (4) numbered causes of

action that remain in this case:[1]   (1) the Center's disciplinary system had a racially

discriminatory impact on African-American employees, including himself, in violation

of Title VII and 42 U.S.C. § 1981;  (2) defendant's written and oral policies created an

employment contract with Finley, which the Center breached by terminating him without

cause; (3) intentional infliction of emotional distress; and (4) defamation.  Complaint,

Record Doc. No. 2, at pp. 6-10.  Finley also claims that the Center's  "unlawful and

discriminatory and employment practices and violations of Plaintiff's rights protected by

federal law . . . denied him a fair due process as guaranteed by [defendant's] stated

employment practices and policies."  Id. at p. 2.

---

[1]The court previously granted the Center's motion for (partial) summary judgment, Record Doc.
No. 21, and dismissed plaintiff's race- and gender-based disparate treatment claims under Title VII and
Section 1981.  Record Doc. No. 37.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 13.

The Center filed a second motion for summary judgment, seeking "dismissal of all of the remaining claims made by plaintiff, i.e., the disparate impact claim under Title VII and all state law claims based on defamation, intentional infliction of emotional distress and breach of contract."   Record Doc. No. 44-1 at p. 1 (emphasis added). Defendant's motion and memorandum do not specifically mention plaintiff's due process claim.

The Center argues in its motion that, even if Finley could establish a prima facie case that the Center's disciplinary system had a racially discriminatory disparate impact, he has no evidence to rebut defendant's business necessity defense.  The Center further contends that Finley has no evidence that defendant's conduct was extreme and outrageous, as required to make out a prima facie case of intentional infliction of emotional distress.  As to defamation, defendant argues that Finley cannot establish a prima facie case because he cannot produce any evidence that the allegedly defamatory statements were published to a third party.  The Center also asserts the affirmative defense that any statements that defendant's employees made regarding Finley were subject to a qualified privilege and that he has no evidence to show that the statements were made with malice or bad faith, which is required to rebut the qualified privilege.

2

The Center asserts that Finley's breach of contract claim must be dismissed because the parties did not have an employment contract, making plaintiff an at-will employee who could be discharged at any time.

The Center's motion is supported by the recent affidavit of its Executive Director, Tom Jarlock, dated March 5, 2013.  Record Doc. No. 44-4.  Defendant incorporates into its motion the evidence previously provided to the court in connection with the Center's earlier motion for summary judgment:  Jarlock's affidavit dated November 14, 2012, Record Doc. No. 21-4, and three "Unusual Occurrence Reports" that were completed in October 2011 by defendant's employees, Joy Chauvin, Donald Carter and Kelsie McDonald, Defendant's Exhs. A, B and C, respectively, Record Doc. No. 21-4;[2] and the affidavits of Chauvin and Carter.  Record Doc. No. 21-5.

Plaintiff, who has been represented by counsel since the first week of December 2012, filed a timely opposition memorandum.  The sole basis for his opposition is that he "is unable to respond for the reason that discovery is not complete."  Record Doc. No. 46 at p. 1.  Although he cites Fed. R. Civ. P. 56(d), Finley has not attached to his memorandum "any affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify his opposition."  Fed. R. Civ. P. 56(d).

---

[2]Defendant's Exhibits A, B and C in Record Doc. No. 21-4 are copies of handwritten documents that were attached to plaintiff's complaint.  Record Doc. No. 2-1.  The copies attached to plaintiff's complaint are more legible than the recopied versions attached to defendant's motion, so I cite to these three exhibits in the text below as being in Record Doc. No. 2-1, rather than in Record Doc. No. 21-4.

Defendant received leave to file two reply memoranda. Record Doc. Nos. 51, 54, 55, 56, 57. In its second reply memorandum, the Center argues that plaintiff cannot maintain a due process claim because, as an at-will employee, he has no property interest in his continued employment. Record Doc. No. 57.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion is **GRANTED**. Plaintiff has offered no competent evidence sufficient to create a triable issue of fact as to these claims on which he bears the burden of proof at trial, so that summary judgment under the Celotex standard described below must be entered against him.

## I.   THE UNDISPUTED FACTS

The following facts are established by defendant's competent summary judgment evidence and are accepted as undisputed for purposes of the pending motion.

Plaintiff's employment was terminated based on Jarlock's investigation and findings concerning an accusation by a female employee, Kelsie McDonald (who is no longer employed by the Center), that Finley had made inappropriate, sexually oriented remarks to her in the workplace. Jarlock conducted the investigation based on three Unusual Occurrence Reports he received regarding an incident involving McDonald during a training session that Finley conducted on October 13, 2011. All of the Unusual

Occurrence Reports are contemporaneously signed and dated by the employees who wrote them, by the Director of Operations and by the Executive Director.

According to McDonald's Unusual Occurrence Report dated October 20, 2011, she reported to her supervisor, Carter, on the training day that Finley had told her a story during the training about a past sexual encounter he had experienced.  McDonald stated in her Unusual Occurrence Report:

> This is not the first time Finley has made nuances of sexual nature or said things to me about other women that I consider to be inappropriate talk for the workplace, and in my opinion, anytime. After the incident on October 13, 2011, I reported what happened to my supervisor, Donald Carter.

Record Doc. No. 2-1 at p. 13.

Carter's Unusual Occurrence Report, also dated October 20, 2011, relates that McDonald approached him during a break in the training "and stated that Mr. Finley had said some things of a sexual nature that made her feel uncomfortable."  Carter spoke to Finley immediately, telling him that "McDonald had reported to me that he had said some things of a sexual nature that made her feel uncomfortable."  Id. at p. 12.  Finley replied that McDonald must have misunderstood what he said.  Finley and Carter then met with "McDonald outside the training room where Mr. Finley . . . apologized for his actions" and both parties continued with the training.  Id.  Carter notified the Operations Manager of the incident on October 19, 2011.  Id. at p. 11.  Carter's affidavit confirms

that the events recorded in his Unusual Occurrence Report occurred as he stated therein.

Record Doc. No. 21-6.

Chauvin, in her Unusual Occurrence Report, dated October 25, 2011, said that McDonald told her on October 21 about an incident that had occurred with Finley during recent training. McDonald told Chauvin that Finley had "leaned over to her and whispered to her about a situation that occurred at a prior conference," at which Finley got drunk and went to the hotel room of two women. Id. at p. 13. According to Chauvin's report, McDonald said that Finley "proceeded to tell her details of the night. [McDonald] said this made her extremely uncomfortable and that he might be suggesting something about the upcoming LJDA conference. She excused herself to get away from Mr. Finley" and then told Carter what had happened. Id.

Chauvin's affidavit states that she is an administrative employee of the Center and that she is friendly with McDonald, who is a former employee. Record Doc. No. 21-5. Chauvin confirms in her affidavit that the events documented in her Unusual Occurrence Report occurred while she was a guest in McDonald's house on October 21, 2011. Chauvin explains that, at the time of the incident, McDonald was scheduled to attend an out-of-town conference of the Louisiana Juvenile Detention Association with Finley and other employees of the Center, and that this fact

> was the source of Ms. McDonald's discomfort with Finely's [sic] inappropriate conversation. . . . Ms. McDonald was under the impression that Finley's purpose in inappropriately describing the matters which

6

occurred at a previous conference was to suggest to Ms. McDonald that she participate in the kinds of sexual activities which he had described to her.

Id. at ¶¶ 7-8. Chauvin further states that "Finley's behavior, as related to her by Ms. McDonald, is in direct violation of the Center's policies and procedures as they prohibit the kinds of sexually explicit conversation in which Finley engaged." Id. at ¶ 10.

Jarlock states in his affidavit submitted in support of defendant's first motion for summary judgment that the Center terminated Finley's employment after Jarlock "had the matter investigated and determined that Ms. McDonald's complaints had merit." Jarlock affidavit, Record Doc. No. 21-4, at ¶ 16. Jarlock determined that Finley had

> violated numerous of the Center's rules and regulation [sic] regarding appropriate on-the-job behavior. Specifically, Finley violated regulations which prohibit the making of sexually charged remarks to co-employees during working hours. Moreover, he violated rules and policies prohibiting the making of offensive remarks which interfere with a co-employee's performance of her work.

Id. at ¶ 16. Jarlock states that Finley was fired on October 27, 2011 for these reasons, not "because of any gender or racial reasons." Id. at ¶ 17.

Jarlock's more recent affidavit, Record Doc. No. 44-3, establishes that Finley had no employment contract and his employment was at-will. The employee conduct regulations on which defendant relied to terminate plaintiff's employment (which are attached to Finley's complaint, Record Doc. No. 2-1 at pp. 35-38, and verified by his own previously filed affidavit, Record Doc. No. 31-1), are racially neutral. Jarlock

reiterates that the Center's decision to terminate Finley was based on a good-faith belief, after investigation, that McDonald's accusations against him were true.

Jarlock also asserts that the employee conduct regulations on which defendant relied to terminate plaintiff are necessary to the proper conduct of defendant's business. He avers that Finley's termination was not based on any intention to inflict severe emotional distress on him and that the Center had no malicious intent to defame plaintiff as a result of his termination.

Plaintiff, in his complaint and his statement attached to the complaint, denies that he made the remarks of which McDonald accused him. He provides his conflicting version of what he said to her and what happened thereafter at work. Finley asserts that McDonald had a motive to lie to cover up her own work performance problems, about which he and other supervisors had counseled her. He also alleges that the Center's investigation of McDonald's complaint revealed that she had previously made exaggerated and false reports about other co-workers.

The court previously found that Finley failed to raise a genuine dispute of material fact regarding the Center's legitimate reasons for terminating his employment and that defendant was entitled to summary judgment in its favor as a matter of law on plaintiff's claims of race- and gender-based disparate treatment. Those claims have been dismissed. Record Doc. No. 37.

II.   <u>ANALYSIS</u>

A.   <u>Standard of Review for Summary Judgment Motions</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is
competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in
the record that it believes demonstrate the absence of a genuinely disputed material fact,
but it is not required to negate elements of the nonmoving party's case. Capitol Indem.
Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production
may rely on a showing that a party who does have the trial burden cannot produce
admissible evidence to carry its burden as to [a particular material] fact." Advisory
Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome
of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248
(1986). No genuine dispute of material fact exists if a rational trier of fact could not find
for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't
Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the
burden of proof at trial must cite to particular evidence in the record to support the
essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex
rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete

failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

B.    <u>Plaintiff's Argument Is Not Supported as Required by Fed. R. Civ. P. 56(d)</u>

Finley's sole response to defendant's summary judgment motion is that discovery has not been completed, so that the court should defer consideration of the motion pursuant to Fed. R. Civ. P. 56(d)(a) and (2).  Plaintiff served written discovery requests on defendant on February 14 and 15, 2013, and had not received responses as of March 19, 2013, when he filed his opposition memorandum.  Finley issued a subpoena on Wednesday, March 13, 2013, to depose McDonald on the morning of Monday, March 18, 2013.  Plaintiff's Exh. 4, Record Doc. No. 46-4.  Finley noticed the deposition and sent the notice to defendant's attorney on Friday, March 15, 2013.  Plaintiff's Exh. 5, Record Doc. No. 46-5.  McDonald did not appear for the deposition.

Plaintiff's Rule 56(d) argument is unavailing for two reasons.  First and most importantly, he has <u>not</u> supported his request for more time to oppose the Center's motion with any affidavit or declaration setting forth <u>specific facts</u> that he expects discovery to reveal that would create a genuine issue of disputed fact as to any of his claims, as required by Fed. R. Civ. P. 56(d).

Second, Finley was dilatory in pursuing discovery.  He did not serve his first set of written discovery requests until eleven months after filing his lawsuit and only 30 days before the discovery deadline.  Defendant's responses to plaintiff's first set of discovery requests were due on the discovery deadline of March 18, 2013, while defendant's responses to the second set of discovery requests were due the next day, <u>after</u> the

12

discovery deadline expired.  Finley tried to depose non-party witness McDonald on the last day of the discovery period, which was eleven days <u>after</u> the Center filed its motion for summary judgment.  The subpoena provided inadequate notice of only five days (<u>if</u> the subpoena was served on McDonald the same day it was issued) and the notice of deposition provided inadequate notice of less than one business day to defendant's attorney.  <u>See</u> Fed. R. Civ. P. 30(b)(1) ("A party who wants to depose a person by oral questions must give <u>reasonable written notice</u> to every other party.") (emphasis added); Fed. R. Civ. P. 45(c)(3)(A)(i) ("On timely motion, the issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply . . . .").

In these circumstances, plaintiff's

argument fails because Rule 56 does not require that <u>any</u> discovery take place before summary judgment can be granted.  As a result, in a motion to extend the time to respond to a motion for summary judgment, **the simple claim that discovery has not closed is insufficient**.  A trial court cannot rule on a summary judgment motion where adequate discovery has been denied a party, but any party claiming the need for additional discovery to defend against a motion for summary judgment must make a sufficient showing under Fed R. Civ. P. 56(f) [now Rule 56(d)].

For a party to mandate relief under Rule 56(f), the **party must show both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence**.  The . . . party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment. [Plaintiff] . . . has not made the required showing under Rule 56(f) to merit the requested relief.  Moreover, another criteria for relief under Rule 56(f) is that the **[plaintiff] must have exercised due diligence in discovery**. . . .  [T]he trial court need not aid non-movants who have occasioned their own predicament through sloth. Again, [plaintiff's] actions justify denial of the requested relief. [Plaintiff]

13

> did not initiate discovery until the last days of the allotted time. By that
> time, any responses were not required until after the summary judgment
> briefing schedule was completed. [Plaintiff] knew (or should have known)
> the briefing schedule and the discovery period. Nevertheless, she failed to
> act diligently in the pursuit of evidence. **Her problem is one of her own
> making; Rule 56(f) [now Rule 56(d)] precludes . . . relief in this
> situation**.

Baker v. Am. Airlines, Inc., 430 F.3d 750, 756 (5th Cir. 2005) (quotations, citations and

footnote omitted) (underlined emphasis in original; bold emphasis added); accord Silver

Dream, L.L.C. v. 3MC, Inc., No. 11-30968, 2013 WL 1153431, at *3 (5th Cir. Mar. 18,

2013) (citing Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006); Adams

v. Travelers Indem. Co., 465 F.3d 156, 162 (5th Cir. 2006); Enplanar, Inc. v. Marsh, 11

F.3d 1284, 1292 (5th Cir. 1994); Wichita Falls Ofc. Assocs. v. Banc One Corp., 978 F.2d

915, 919 (5th Cir. 1992); Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th

Cir. 1991)).

The court therefore declines to delay consideration of defendant's motion for

summary judgment.

> C.  Finley Fails to Produce Any Evidence to Rebut the Center's Business
>     Necessity Defense to his Discriminatory Impact Claim

Plaintiff alleges that the Center's disciplinary system had a racially discriminatory

impact on African-American employees, including himself. Defendant responds that its

challenged policies were based on business necessity.

Title VII establishes the burden of proof in a disparate impact case as follows:

(1)(A)  An unlawful employment practice based on disparate impact is established under this subchapter only if–

(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin <u>and</u> the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity . . . .

42 U.S.C. §  2000e-2(k)(1)(A)(i) (emphasis added).

> Disparate impact claims involve facially neutral employment policies that create such statistical disparities disadvantaging members of a protected group that they are functionally equivalent to intentional discrimination. To establish a <u>prima facie</u> case of discrimination under a disparate impact theory, a plaintiff must show:  (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two.  The Supreme Court has explained that a prima facie case of disparate-impact liability [is] essentially, a threshold showing of a significant statistical disparity, and nothing more.
>
> Claims of disparate impact under Title VII must, of necessity, rely heavily on statistical proof. . . .  Ordinarily, a <u>prima facie</u> disparate impact case requires a showing of a substantial statistical disparity between protected and non-protected workers in regards to employment or promotion. . . .  Generally, a plaintiff must produce statistical evidence comparing the effects of a challenged policy on protected and unprotected groups of employees.

<u>Davis v. Dallas Indep. Sch. Dist.</u>, 448 F. App'x 485, 491-92 (5th Cir. 2011) (quotations and citations omitted); <u>accord</u> <u>Crawford v. U.S. Dept. of Homeland Sec.</u>, 245 F. App'x 369, 379 (5th Cir. 2007).

The employer "may rebut a prima facie case of disparate impact by demonstrating that a challenged practice is a business necessity."  <u>Id.</u> (citing <u>Pacheco v. Mineta</u>, 448 F.3d 783, 787 (5th Cir. 2006)); <u>accord</u> <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 431

(1973).  The employer's motives in applying the policy are not at issue in a disparate

impact case.  Young v. Covington & Burling LLP, 736 F. Supp. 2d 151, 161 (D.D.C.

2010) (citing Lewis v. City of Chicago, 130 S. Ct. 2191, 2200 (2010)).   Business

necessity, not the employer's good intent or the absence of discriminatory intent, is the

touchstone for determining whether the challenged policy rebuts a plaintiff's prima facie

case.  Bazile v. City of Houston, 858 F. Supp. 2d 718, 762 (S.D. Tex. 2012) (citing Ricci

v. DeStefano, 557 U.S. 557, 621 (2009) (Ginsburg, J., dissenting) (quoting Griggs, 401

U.S. at 431)).  "The Fifth Circuit has also defined this burden as one to show that a

'policy has a significant relationship to a legitimate business purpose.'"  Young, 736 F.

Supp. 2d at 161 n.24 (quoting Equal Emp'mt Opportunity Comm'n v. J.M. Huber Corp.,

927 F.2d 1322, 1328 (5th Cir. 1991)).

          Because business necessity is an affirmative defense, defendant bears the burden

of both production and persuasion.  El v. Se. Pa. Transp. Auth., 479 F.3d 232, 237 (3d

Cir. 2007).  If the employer carries that burden, plaintiff "may still succeed by showing

that the employer refuses to adopt an available alternative employment practice that has

less disparate impact and serves the employer's legitimate needs."  Ricci, 557 U.S. at 578

(citing 42 U.S.C. § 2000e-2(k)(1)(A)(ii), (C)).

          The Center concedes solely for purposes of the pending motion that Finley can

make out a prima facie case.  Defendant argues that its challenged employment practices

are a business necessity.  The affidavits and exhibits filed by the Center satisfy its burden

to show that its employment practices were based on business necessity.  Finley has failed to rebut that evidence in any way.

Jarlock's affidavits establish that Finley was terminated after an investigation of alleged sexual harassment.  Plaintiff was fired based on defendant's good faith belief that he had engaged in the conduct of which he was accused and had violated the Center's written employment policies.  The Center's mission is to provide a safe but restrictive environment for troubled juveniles, some of whom are prone to violence and all of whom have been found by the courts to require residential detention.  Jarlock's affidavits demonstrate that defendant had written employment policies (which are attached to plaintiff's complaint) that prohibit activities and comments by employees of a sexual nature, which might interfere with the employee's job performance or the functioning of the Center.  The policies also require employees to report instances of sexual harassment or discrimination.  The policies are necessary to protect employees from harassment and discrimination, maintain employee morale and keep employees focused on their job duties while working in a restrictive and possibly volatile situation involving the care of juveniles who have been adjudicated in need of detention.  In addition, the policies are a means by which defendant attempts to comply with Title VII's prohibitions on sexual harassment and discrimination in the workplace and to provide employees with procedures for reporting such activities.  The Center has carried its burden to show that the policies under which plaintiff was investigated and fired are a business necessity.

The burden of producing evidence to rebut those reasons shifts to Finley. In response to defendant's evidence, Finley must produce competent evidence to create a material fact issue that an alternative employment practice exists which has less disparate impact and serves the Center's legitimate needs, but which the Center refuses to adopt. Plaintiff has produced <u>no evidence</u> to satisfy his burden in this regard. Accordingly, the Center is entitled to summary judgment in its favor as a matter of law on plaintiff's claim of disparate impact racial discrimination.

      D.     <u>Plaintiff Fails to Establish a Material Fact Issue on his Defamation Claim</u>

Finley claims that unnamed employees of the Center, on "numerous" unspecified occasions, defamed him by repeating to other unnamed employees of the Center and of "the Office of Juvenile Justice offices" McDonald's allegedly false accusation, the fact that plaintiff's employment was terminated and the reasons for his termination. He alleges that portions of McDonald's oral statements were reduced to writing and disseminated by unspecified persons to "the youth inside of" the Center. He claims that McDonald's statements, which branded him as a sexual harasser, were defamatory per se. Complaint, Record Doc. No. 2. The allegations of his complaint were verified by his affidavit. Record Doc. No. 31-1.

> Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher;

and (4) resulting injury.  The fault requirement is often set forth in the jurisprudence as malice, actual or implied.  See, Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So. 2d 196, 198 (La. 1980) (which also considers falsity as a fifth and separate element) . . . .  Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.  If even one of the required elements of the tort is lacking, the cause of action fails.

Costello v. Hardy, 864 So. 2d 129, 139-40 (La. 2004) (quotations and additional citations

omitted); accord Kennedy v. Sheriff, 935 So. 2d 669, 674-75 (La. 2006).

The Center argues that Finley has no evidence to establish the publication element

of a prima facie case of defamation.

Publication refers to any nonprivileged communication of defamatory words, written or oral, and it renders a defendant liable for all republication that is the natural and probable consequence of the author's act.

An intra-corporate communication, among officers or agents of the same corporation, and in relation to their duties for the corporation, is merely a communication of the corporation itself.  It cannot be construed as being a communication to a third party.  This position is supported by Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So. 2d 196 (La. 1980), in which the Supreme Court found that statements made by and in the presence of other supervisory personnel, to an employee concerning an altered check, did not constitute publication, since the supervisory personnel were essential to the investigation.  We interpret this case to mean that statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons.

Commercial Union Life Ins. Co., v. Melikyan, 424 So.2d 1114, 1115, (La. App. 1 Cir. 1982).

However, Commercial Union must be received in conjunction with the case of Heflin [v. Sabine Ass'n of Retarded Citizens, 685 So. 2d 665, 667 (La. App. 3d Cir. 1996)], which requires an additional element of good

faith.  An employer's communication regarding a subject in which it has an interest or a duty is not considered published when made in good faith.

Atwood v. Grand Casinos of La., Inc., 887 So.2d 634, 638-39 (La. App. 3d Cir. 2004)

(quotations and additional citations omitted); accord Marshall v. Circle K Corp., 715 F.

Supp. 1341, 1343 (M.D. La. 1989), aff'd, 896 F.2d 550 (5th Cir. 1990); Cangelosi, 390

So. 2d at 198; Bell v. Rogers, 698 So. 2d 749, 756 (La. App. 2d Cir. 1997).

> In the instant case,

> [Finley] has made no prima facie showing of the essential element regarding "publication" of any alleged defamatory statements by [defendant].  Although [plaintiff] has alleged that [McDonald or other employees of the Center] spread false rumors about him to other co-workers, it is well established that statements made between employees in the course and scope of their employment are not statements communicated or publicized to third persons so as to constitute publication for a defamation claim.

McDaniels v. Hotel Parking Mgmt., Inc., No. 2010-0266, 2010 WL 8972216, at *3 (La.

App. 4th Cir. 6/16/10) (citing Atwood, 887 So. 2d at 639; Doe v. Grant, 839 So. 2d 408,

416 (La. App. 4th Cir. 2003); Bell, 698 So. 2d at 749).

The competent summary judgment evidence shows that McDonald made her work-related accusation to two supervisors at the Center, who repeated the accusation to Jarlock in the course of his investigation and pursuant to the Center's written anti-sexual harassment policies.  These statements, as a matter of law, are not publication to third parties.

Finley has failed to come forward with evidence to establish a genuine issue of material fact that defendant published defamatory statements to any persons who were not its employees.  He cannot rest on the conclusory allegations of his complaint and affidavit that unnamed employees of the Center, on unspecified occasions, made defamatory statements about him to other unnamed employees of "the Office of Juvenile Justice offices" and unnamed juveniles.  "[A]t the summary judgment stage, we require evidence–not absolute proof, but not mere allegations either."  Ontiveros v. City of Rosenberg, 564 F.3d 379, 383 (5th Cir. 2009) (quotation omitted).  "All we have [is plaintiff's] unsubstantiated assertions.  Needless to say, unsubstantiated assertions are not competent summary judgment evidence."  Garcia v. LumaCorp, Inc., 429 F.3d 549, 555 (5th Cir. 2005) (citing Celotex, 477 U.S. at 324) (quotation omitted).

Because Finley has not provided the court with evidence to establish the publication element of his prima facie case of defamation, the Center is entitled to summary judgment on this claim as a matter of law.

      E.      Plaintiff Fails to Establish a Material Fact Issue on his Intentional Infliction of Emotional Distress Claim

Finley claims that McDonald's accusations were false, the Center knew they were false and the Center's conduct, including its decision to terminate his employment, was intended to cause him severe emotional distress.  The Center argues that plaintiff has no evidence to demonstrate a prima facie case of intentional infliction of emotional distress.

To establish a claim of intentional infliction of emotional distress, plaintiff must present evidence that defendant's conduct was extreme and outrageous, his emotional distress was severe <u>and</u> defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct. <u>Mitchell v. Tracer Constr. Co.</u>, 256 F. Supp. 2d 520, 526-27 (M.D. La. 2003) (citing <u>White v. Monsanto Co.</u>, 585 So. 2d 1205, 1209 (La. 1991)); <u>accord</u> <u>Aronzon v. Sw. Airlines</u>, No. 03-394, 2004 WL 57079, at *6 (E.D. La. Jan. 9, 2004). Failure to demonstrate one element of a prima facie case __.

The Louisiana Supreme Court has stated that the conduct must be

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

<u>White</u>, 585 So. 2d at 1209.

"Conduct which is merely [tortious] or illegal does not rise to the level of being extreme and outrageous." <u>Nicholas v. Allstate Ins. Co.</u>, 765 So. 2d 1017, 1025 (La. 2000). Louisiana Civil Code article 2315, from which the cause of action for intentional infliction of emotional distress derives, "does not create liability for employment discrimination." <u>Hornsby v. Enter. Transp. Co.</u>, 987 F. Supp. 512, 515 (M.D. La. 1997).

"Employment disputes must have some quality that places them beyond the ordinary in order to qualify for intentional infliction of emotional distress." Charles v. JetBlue Airways Corp., No. 08-40, 2009 WL 273206, at *12 (E.D. La. Jan. 26, 2009) (citing Dean v. Ford Motor Credit Co., 885 F.2d 300 (5th Cir. 1989)). "Mere violation of laws regulating conduct in the workplace is not enough to establish intentional infliction." Skidmore v. Precision Printing & Pkg., Inc., 188 F.3d 606, 613 (5th Cir. 1999) (under Texas law; identical to Louisiana law). "It is well established that unlawful termination without more is not outrageous enough to support a finding of intentional infliction of emotional distress." Mayes v. Ofc. Depot, Inc., 292 F. Supp. 2d 878, 897 (W.D. La. 2003) (citing Nicholas, 765 So. 2d at 1027).

Thus, actionable cases of intentional infliction of emotional distress arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress." Nicholas, 765 So. 2d at 1026. "In employment situations, Louisiana courts generally limit this showing to situations of repetitive harassment." Ware v. CLECO Power LLC, 90 F. App'x 705, 708 (5th Cir. 2004) (citing White, 585 So. 2d at 1209). Mere "disciplinary action and conflict in a . . . workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily" extreme or outrageous. White, 585 So. 2d at 1210.

Demotion or termination for cause does not rise to the level of extreme and outrageous conduct because "employers must be given reasonable latitude when making employment decisions. . . . Employers cannot be required to continue to employ workers who are under-productive and/or ineffective." LaBove v. Raftery, 802 So. 2d 566, 582 (La. 2001) (quotation and citation omitted); see also Tisdale v. Woman's Hosp., 191 F. App'x 255, 257 (5th Cir. 2006) ("Under Louisiana law, the termination of an at-will employee [for cause], even one with a long tenure, does not" establish intentional infliction of emotional distress sufficient to survive summary judgment.); Whitten v. State Farm Ins., No. 01-1915, 2002 WL 31395892, at *7 (W.D. La. Sept. 11, 2002) (quoting White, 585 So. 2d at 1210) (Plaintiff "has failed to establish a genuine issue of fact for trial on her claim that she was wrongfully terminated. 'Liability [for intentional infliction of emotional distress] does not attach where the actor has done no more than to insist upon his legal rights in a permissible way.'"); Fletcher v. Wendelta, Inc., 999 So.2d 1223, 1231 (La. App. 2d Cir. 2009) ("Fletcher was an at-will employee. Her dismissal under the circumstances . . . appear[s] entirely reasonable, and Fletcher offered no evidence demonstrating how she would begin to prove the tort of intentional infliction of emotional distress.").

This court previously granted summary judgment in defendant's favor on plaintiff's race- and gender-based discrimination claims, and has granted summary judgment on his disparate impact and defamation claims in ruling on defendant's current

motion.  Plaintiff's allegations, even if accepted as true, "simply do not rise to the high level of 'extreme and outrageous' conduct, over a sufficient period of time, to constitute a tort under existing Louisiana law."  Mitchell, 256 F. Supp. 2d at 527.

Finley has not produced any competent summary judgment evidence to create a material fact issue that any of defendant's actions rose above the level of ordinary disciplinary action in the workplace.  Accordingly, the Center is entitled to summary judgment as a matter of law on plaintiff's intentional infliction of emotional distress claim.

F.      Plaintiff Fails to Establish a Material Fact Issue on his  Breach of Contract
        Claim

The Center's evidence establishes that it did not have any employment contract. with Finley.  As an at-will employee, Finley could be fired at any time with or without cause without defendant incurring any liability.

> The employer-employee relationship is a contractual relationship.
> As such, an employer and employee may negotiate the terms of an
> employment contract and agree to any terms not prohibited by law or
> public policy.  When the employer and employee are silent on the terms of
> the employment contract, the civil code provides the default rule of
> employment-at-will. . . .   This default rule is contained in LSA-C.C.
> art. 2747.
> Under LSA-C.C. art. 2747, generally, an employer is at liberty to
> dismiss an employee at any time for any reason without incurring liability
> for the discharge. . . .  Aside from the federal and state statutory exceptions
> [prohibiting discrimination or retaliation], there are no [b]road policy
> considerations creating exceptions to employment at will and affecting
> relations between employer and employee.

Quebedeaux v. Dow Chem. Co., 820 So. 2d 542, 545-46 (La. 2002) (quotations, citations and footnotes omitted).

> Without a specific contract or agreement which establishes a fixed term of employment, an "at will" employee is free to quit at any time without liability to his or her employer and, likewise, may be terminated by the employer at any time, provided the termination does not violate any statutory or constitutional provision.  Unless an employment contract is for a definite period of time, there is no enforceable action for damages for dismissal under state law, as the contract can be terminated at the will of either employee or employer.

Newsom v. Global Data Sys., Inc., No. 2012-412, 2012 WL 6178218, at *4 (La. App. 3d Cir. Dec. 12, 2012) (citations omitted); accord Wohlschlaeger v. Fairmont Hotel Co., 83 F.3d 419, 1996 WL 197517, at *3 (5th Cir. Mar. 22, 1996); Chauvin v. Radioshack Corp., No. 08-4255, 2009 WL 981708, at *3 (E.D. La. Apr. 9, 2009), aff'd, 332 F. App'x 994 (5th Cir. 2009); Matthew v. Saia Motor Freight Line, Inc., No. 95-1185, 1996 WL 7041, at *2 (E.D. La. Jan. 8, 1996).

In the instant case, plaintiff has proffered no evidence to contradict the Center's evidence that he was an at-will employee who could be discharged at any time for any reason.  Accordingly, the Center is entitled to summary judgment in its favor as a matter of law on plaintiff's breach of contract claim.

G.     Plaintiff's Due Process Claim Fails as a Matter of Law

The Center is a government agency.  Finley alleges that defendant's "unlawful and discriminatory and employment practices and violations of Plaintiff's rights protected by

federal law . . . denied him a fair due process as guaranteed by [defendant's] stated employment practices and policies."  Complaint, Record Doc. No. 2,  at p. 2.

Defendant did not argue specifically for dismissal of plaintiff's due process claim until it filed its second reply memorandum.  The second reply memorandum did not present any new evidence, but relied on the evidence already in the record.  Although the Center did not argue specifically for dismissal of the due process claim in its original memorandum, its motion seeks summary judgment on all of plaintiff's claims.  As a matter of law, in the absence of any evidence that he had an employment contract, Finley cannot establish that he had a protected property interest in continued employment, such that any particular process was due to him.  Therefore, the court does not find it necessary to give plaintiff additional time to respond to defendant's arguments regarding this claim.

To establish a due process claim,

"a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."  To enjoy a property interest in employment, an employee must "have a legitimate claim of entitlement" created and defined "by existing rules or understandings that stem from an independent source such as state law . . . ."  In Texas [just as in Louisiana], there exists a presumption that employment is at-will, unless that relationship has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated.

27

Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010) (quoting Bd. of Regents v. Roth,

408 U.S. 564, 577 (1972); Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001)) (citing

Muncy v. City of Dallas, 335 F.3d 394, 398 (5th Cir. 2003)).

Although Finley was a public employee, "a property interest is not incidental to

public employment, instead it must be created by an independent source, such as state

law." Muncy, 335 F.3d at 398 (citing Perry v. Sindermann, 408 U.S. 593, 601 (1972)).

"'A property interest is created where the public entity has acted to confer, or

alternatively, has created conditions that infer [sic, imply?], the existence of a property

interest by abrogating the right to terminate an employee without cause.'" Bolton v. City

of Dallas, 472 F.3d 261, 264 (5th Cir. 2006) (quoting Muncy, 335 F.3d at 398)

(bracketed material inserted by Bolton court).

As discussed in the preceding section, Finley has proffered no evidence to

contradict the Center's evidence that he had no employment contract and was an at-will

employee who could be discharged at any time for any reason under Louisiana law.  The

copies of defendant's employment policies attached to plaintiff's complaint do not

abrogate plaintiff's at-will status.  Record Doc. No. 2-1 at pp. 35-38.

In the absence of any property interest in his continued employment, Finley cannot

establish a due process claim.  "Without a constitutionally protected property interest in

his employment, any allegations and evidence that [defendant] did not follow proper

procedures during the events leading to the termination notice are not relevant to the

Fourteenth Amendment due process claim." <u>Cunningham v. Bd. of Supervisors</u>, No. 06-602-C, 2008 WL 4346422, at *8 n.42 (M.D. La. Sept. 17, 2008).

However, even if Finley had a protected property interest, the verified allegations of his complaint and the competent summary judgment evidence in the record establish that he received appropriate pre-termination procedures.  The United States Supreme Court has held that a plaintiff with a property interest in employment is entitled <u>only</u> to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542, 546 (1985).

"Due process requires only notice that is both adequate to apprise a party of the pendency of an action affecting its rights and timely enough to allow the party to present its objections." <u>Burns v. Harris Cnty. Bail Bond Bd.</u>, 139 F.3d 513, 521 (5th Cir. 1998) (quotations and citation omitted).  "[T]he pretermination 'hearing,' though necessary, need not be elaborate." <u>Loudermill</u>, 470 U.S. at 545.

The final decisionmaker "must hear and consider the employee's story before deciding whether to discharge the employee." <u>Coggin v. Longview Indep. Sch. Dist.</u>, 337 F.3d 459, 465 (5th Cir. 2003) (citation omitted).  So long as the employee has the right to respond to the charges before the final decisionmaker, "something less than a full evidentiary hearing is sufficient prior to adverse administrative action." <u>Loudermill</u>, 470 U.S. at 545 (quotation and citation omitted).  The Supreme Court concluded that the

"opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Id. at 546.

In Myrick v. City of Dallas, 810 F.2d 1382 (5th Cir. 1987), defendant invited plaintiff to submit a written response to its reasons for termination and allowed her to discuss informally with the final decisionmaker the incident on which her termination was based before she was fired. Id. at 1384. The Fifth Circuit held that she had received all the pre-termination process required by Loudermill. Id. at 1386; see also Biliski v. Red Clay Consol. Sch. Dist., 574 F.3d 214, 221-22 (3d Cir. 2009) (notice was sufficient when plaintiff's supervisors explained to him why they were recommending his termination and gave him a letter stating that they would submit recommendation to final decisionmaker); Browning v. City of Odessa, 990 F.2d 842, 844-45 (5th Cir. 1993) (informal pre-termination half-hour meeting between employee and final decisionmaker satisfied due process).

According to his own verified complaint, its attachments and defendant's competent evidence, Finley was given the opportunity to refute McDonald's accusations and to provide a written explanation of his conduct during the investigation of her charges. He had a pre-termination meeting with Director of Operations Russell Sanders and a second pre-termination meeting with Sanders and Jarlock, at which he was given a chance to tell his side of the story and was told the reason he was being terminated. He received written reasons for his termination. Record Doc. No. 2 at ¶¶ 15-16, 18-25;

Record Doc. No. 2-1 at pp. 5, 30, 39, 42-43.  Under the authorities cited above, plaintiff received all the process that was due.

Accordingly, defendant is entitled to summary judgment in its favor as a matter of law on this claim.

<u>CONCLUSION</u>

For all of the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH PREJUDICE.  Judgment will be separately entered.

New Orleans, Louisiana, this _____3rd_____ day of April, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

31