UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID FINLEY, JR.                          CIVIL ACTION

VERSUS                                     NO. 12-726

FLORIDA PARISH JUVENILE          MAGISTRATE JUDGE
DETENTION CENTER                        JOSEPH C. WILKINSON, JR.

## <u>ORDER AND REASONS ON MOTION</u>

Plaintiff, David Finley, Jr., filed a motion for new trial, Record Doc. No. 62, seeking reconsideration under Fed. R. Civ. P. 59(e) of the court's final judgment dismissing all of his claims. Record Doc. No. 61. The judgment was based on two court orders granting the first and second motions for summary judgment filed by defendant, Florida Parish Juvenile Detention Center (the "Center"). In granting the Center's first motion for (partial) summary judgment, the court dismissed plaintiff's race- and gender-based disparate treatment claims under Title VII and Section 1981. Record Doc. No. 37. The second order granted defendant's second motion for summary judgment and dismissed all of Finley's remaining claims. Record Doc. No. 60.

As to the pending motion for new trial, Finley received leave to supplement his motion with the deposition transcript of a non-party witness, Kelsie McDonald. Record Doc. Nos. 63, 64, 65. Defendant filed a timely memorandum in opposition to plaintiff's motion for new trial. Record Doc. No. 66.

This is an employment discrimination case brought by plaintiff, an African-American man, against his former employer. Finley's pro se complaint alleged five (5) numbered causes of action: (1) the Center discriminated against him in violation of Title VII and 42 U.S.C. § 1981 when it terminated his employment based on his race and/or gender; (2) defendant's disciplinary system had a racially discriminatory impact on African-American employees, including himself, in violation of Title VII and 42 U.S.C. § 1981; (3) defendant's written and oral policies created an employment contract with Finley, which the Center breached by terminating him without cause; (4) intentional infliction of emotional distress; and (5) defamation. Complaint, Record Doc. No. 2, at pp. 4-10. Finley also claimed that defendant's wrongful conduct denied him due process. Id. at p. 2.

Finley's motion for new trial challenges the court's final judgment only as to his claims of disparate treatment based on race and/or gender, defamation and lack of due process. He does not challenge the judgment dismissing his disparate impact, intentional infliction of emotional distress and breach of contract claims. Record Doc. No. 62-1 at p. 5.

After the court granted defendant's first motion for summary judgment, Finley filed a motion for reconsideration under Rule 59(e), which the court denied. Record Doc. Nos. 38, 43. However, the court did not enter final judgment on its first summary

judgment order because the Center had not moved for summary judgment on all of plaintiff's claims.   Final judgment was not entered until after the court granted the Center's second summary judgment motion and dismissed the remainder of plaintiff's claims.   Thus, despite Finley's previous motion for reconsideration, the court considers his current motion for new trial under Fed. R. Civ. P. 59(e).   This rule applies to motions filed within "28 days after the entry of the judgment," Fed. R. Civ. P. 59(e), which is the time frame within which Finley filed the instant motion, and is the rule that Finley cites in his memorandum.

The court does <u>not</u> consider Finley's motion under Fed. R. Civ. P. 60(b), which applies to motions filed after the Rule 59(e) deadline has passed, and which defendant argues should be applied to the court's ruling on the Center's first motion for summary judgment.   Because plaintiff's motion fails to meet the Rule 59(e) standards, it would also fail under the stricter standards of Rule 60(b), if that rule applied.

Having considered the complaint, the record, the prior orders of the court, the final judgment, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that plaintiff's motion is **DENIED**.

<u>ANALYSIS</u>

I.    <u>STANDARD OF REVIEW</u>

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Finley's motion was filed within 28 days of the entry of final judgment on all of his claims.  Therefore, Rule 59(e) applies.

District courts have broad discretion in deciding such motions.  <u>Johnson v. Diversicare Afton Oaks, LLC</u>, 597 F.3d 673, 677 (5th Cir. 2010); <u>McGillivray v. Countrywide Home Loans, Inc.</u>, 360 F. App'x 533, 537 (5th Cir. 2010) (citing <u>Hale v. Townley</u>, 45 F.3d 914, 921 (5th Cir. 1995)).  The Fifth Circuit

> "has recognized four grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which a judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, or (4) an intervening change in controlling law."  The Fifth Circuit Court of Appeals has instructed that the standard for <u>Rule 59(e) "favors denial of motions to alter or amend a judgment</u>."

<u>In re Katrina Canal Breaches Consol. Litig.</u>, No. 05-4182, 2009 WL 2447846, at *2 (E.D. La. Aug. 6, 2009) (quoting <u>So. Contractors Grp., Inc., v. Dynalectric Co.</u>, 2 F.3d 606, 611 (5th Cir. 1993); <u>Johnson v. Cain</u>, No. 05-1943, 2007 WL 1741883, at *1 (E.D. La. June 14, 2007)) (citing <u>Arceneaux v. State Farm Fire & Cas. Co.</u>, No. 07-7701, 2008 WL 2067044, at *1 (E.D. La. May 14, 2008)) (emphasis added); <u>accord</u> <u>McGillivray</u>, 360 F. App'x at 537 (citing <u>In re Benjamin Moore & Co.</u>, 318 F.3d 626, 629 (5th Cir. 2002)).  Finley cites the first, second and third grounds in his motion for new trial.

Because a Rule 59(e) motion "calls into question the correctness of a judgment," it is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly discovered evidence." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004) (quotation and citations omitted). "The granting of a Rule 59(e) motion 'is an extraordinary remedy and should be used sparingly.'" In re Pequeño, 240 F. App'x 634, 636 (5th Cir. 2007) (quoting Templet, 367 F.3d at 479); accord Ewans v. Wells Fargo Bank, N.A., 389 F. App'x 383, 389-90 (5th Cir. 2010).

"A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." LeClerc v. Webb, 419 F.3d 405, 412 n.13 (5th Cir. 2005) (citation omitted). "In Templet, [the Fifth Circuit] refused to reverse a district court's rejection of a Rule 59(e) motion when 'the underlying facts were well within the [plaintiffs'] knowledge prior to the district court's entry of judgment.'" In re Rodriguez, 695 F.3d 360, 371 (5th Cir. 2012) (quoting Templet, 367 F.3d at 479).

## II.   PLAINTIFF'S MOTION DOES NOT MEET THE RULE 59(e) STANDARDS

Finley argues that manifest errors of law and fact, the availability of new evidence and the need to prevent manifest injustice support his motion for new trial. Specifically, he contends that his motion should be granted because (1) the court should have given him more time to oppose defendant's first motion for summary judgment and to complete discovery after he retained counsel; (2) plaintiff's denial that he had made a sexually

5

suggestive statement to McDonald in the work place, which was the basis for his termination, created a genuine issue of disputed material fact as to his race and gender discrimination claims; (3) the court granted summary judgment on Finley's due process claim without providing him with an opportunity to be heard, in violation of Fed. R. Civ. P. 56; (4) the court erred by concluding that plaintiff had no evidence to support the publication element of his defamation claim; and (5) he has produced new evidence to support his motion as to all three of the claims on which he moves for reconsideration.

The allegedly new evidence consists of the transcript of McDonald's deposition, taken on March 27, 2013, Record Doc. No. 65; pages 15 through 23 from the Center's employee handbook, Record Doc. No. 62-1;[1] the declarations under penalty of perjury of six of defendant's former employees, Lillie D. Wheat, Ashley Piggott Smith, Brandon Taylor, Earl Olmstead, Duran Michael Mclin, and Lance Jackson, all dated April 30 or May 1, 2013, Record Doc. Nos. 62-2, 62-3, 62-6, 62-7, 62-8, 62-9; Finley's own declaration under penalty of perjury dated May 1, 2013, Record Doc. No. 62-4; and the declaration under penalty of perjury of Finley's wife, Shannon Finley, dated May 1, 2013, Record Doc. No. 62-5.

---

[1]The majority of these pages, consisting of all the new evidence, are unauthenticated. Plaintiff's affidavit, Record Doc. No. 31-1, authenticates only the three pages that were attached to his complaint. Nonetheless, the Center does not dispute that the new pages came from its employee handbook, which the court assumes was in effect when plaintiff's employment was terminated.

A.    There Is Nothing Manifestly Unjust About Enforcing the Court's Deadlines or Applicable Procedural Rules

Finley represented himself during the first nine months of this litigation.  He complains that, once he retained counsel, the court granted him only an additional three weeks, which fell over the Christmas and New Year's holidays, to respond to the pending summary judgment motion and only 90 additional days to complete discovery.  Finley argues that the court "unfairly coupled the nine months the plaintiff proceeded pro se with the three months the plaintiff was represented by counsel" and that the court unfairly enforced procedural rules to his detriment.  Record Doc. No. 62-10 at pp. 6-7.  This argument appears to invoke the "manifest injustice" ground for altering or amending a judgment.

It is well established that "pro se litigants are not exempt from compliance with the relevant rules of procedure and substantive law." Price v. Porter, 351 F. App'x 925, 926 (5th Cir. 2009) (citing Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)); accord Rolen v. City of Brownfield, 182 F. App'x 362, 365 (5th Cir. 2006) (citing Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980)); Hulsey v. State, 929 F.2d 168, 170 (5th Cir. 1991).  "[T]he Federal Rules of Civil Procedure and the relevant local rules of the district court are sufficient to provide pro se litigants with notice of the requirements of summary judgment." Hale v. Burns Int'l Sec. Servs. Corp., 72 F. App'x 100, 101 (5th Cir. 2003) (citing Martin v. Harrison County Jail, 975 F.2d 192, 193 (5th Cir. 1992)).

7

Finley knew of the deadlines imposed by the court's scheduling order in mid-May 2012, which included a December 10, 2012 discovery deadline and a December 19, 2012 deadline for submission of dispositive motions.  Record Doc. No. 14.  The Center filed its motion for summary judgment on December 4, 2012.  Counsel for plaintiff enrolled three days later, and the court promptly granted his motion to extend all deadlines, including the deadline to oppose the summary judgment motion, the discovery deadline and the trial date.  Record Doc. Nos. 29, 30.

Plaintiff's pro se status did <u>not</u> excuse him from pursuing his case by engaging in discovery, filing motions to seek extensions of time, taking advantage of procedural rules or hiring an attorney during the nine months that his case was pending before <u>he decided</u> to retain counsel.  <u>See</u> <u>Templet</u>, 367 F.3d at 479 (plaintiffs who were unrepresented for five months, but were represented by counsel when scheduling order was entered and defendants' summary judgment motion was filed, were not excused from filing opposition to summary judgment motion because "underlying facts were well within the [plaintiffs'] knowledge").  Any time pressure that Finley's lawyer experienced after the court granted his motion to extend the deadlines and trial date was the result of plaintiff's own actions or inaction for the nine preceding months.

The negligence or erroneous strategy choices of a party's attorney or the party himself, which contributed to the court's dismissal of the party's claims, do not amount

to manifest injustice.  Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 409 (4th Cir.

2010) (citing Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962); Gayle v. United Parcel

Serv., Inc., 401 F.3d 222, 226-27 (4th Cir. 2005); Universal Film Exchs., Inc. v. Lust,

479 F.2d 573, 577 (4th Cir. 1973)); Fox v. Am. Airlines, 389 F.3d 1291, 1296 (D.C. Cir.

2004); Ciralsky v. Cent. Intelligence Agency, 355 F.3d 661, 673 (D.C. Cir. 2004);

Bender Square Partners v. Factory Mut. Ins. Co., No. 4:10-CV-4295, 2012 WL 1952265,

at *4 (S.D. Tex. May 30, 2012);  Marine Office of Am., Corp. v. Vulacn [sic] MV,  No.

92-456, 1996 WL 337260, at *1 (E.D. La. June 19, 1996).

"The court has applied the controlling law to the facts of this case in ruling on all

motions and is not aware of any plain or obvious error that is contrary to law.  The court

has not disregarded or ignored applicable precedent, and it has painstakingly reviewed

the motion to reconsider and the record as a whole.  The record reveals that this action

has not been aggressively or diligently prosecuted." Estate of Newton ex rel. Newton v.

Grandstaff, No. 3:10-CV-809-L, 2013 WL 1499354, at *3 (N.D. Tex. Apr. 12, 2013).

There is nothing "unfair" or manifestly unjust about the court's enforcement of its

deadlines, its Local Rules and the appropriate Federal Rules of Civil Procedure in this

matter, either before or after plaintiff hired an attorney.

### B.   Plaintiff's New Evidence Does Not Meet the Test for Newly Discovered Evidence

As to Finley's argument that he has new evidence to submit in opposition to defendant's summary judgment motions, his motion to alter or amend the judgment "based on an alleged discovery of new evidence should be granted <u>only if</u> (1) the facts discovered are of such a nature that they would <u>probably</u> change the outcome; (2) the facts alleged are actually newly discovered <u>and</u> could not have been discovered earlier by proper diligence; <u>and</u> (3) the facts are not merely cumulative or impeaching." <u>Johnson</u>, 597 F.3d at 677 (quotation omitted) (emphasis added).  Plaintiff's evidence does not satisfy this test.

<u>None</u> of the allegedly new evidence is actually newly discovered.  Finley provides no convincing explanation why any of this evidence could not have been acquired by proper diligence during the ten months that this action was pending before his opposition to defendant's first motion for summary judgment was due or during the additional six weeks before his opposition to the Center's second motion for summary judgment was due.  Once the court ruled on the Center's first motion for summary judgment, which addressed only plaintiff's disparate treatment claims, it was virtually inevitable that defendant would, as it did, file a second motion for summary judgment seeking dismissal of Finley's remaining claims.  Yet plaintiff did not act diligently to assemble the supposedly new evidence before the deadline for opposing that motion.

First, McDonald's deposition "was taken [one week] prior to the Court's entry of judgment; therefore, it was not newly discovered. Second, the facts underlying the deposition . . . [were] previously available to [plaintiff]." <u>Bender Square Partners</u>, 2012 WL 1952265, at *2. Finley's explanation of why he waited to depose McDonald does not establish that he was unable to obtain this evidence earlier by proper diligence. His complaint is replete with references to McDonald's actions that led to his allegedly wrongful termination. He knew of her perceived importance as a witness from the inception of his lawsuit. McDonald was listed on the Center's witness list filed on November 6, 2012, Record Doc. No. 19, one month before defendant filed its first summary judgment motion. Finley based his opposition to that motion almost entirely on allegedly disputed fact issues that he argued were raised by her actions, Record Doc. No. 31, yet he failed to depose her until March 27, 2013.

As to Finley's and his wife's declarations, he obviously always knew of his own, and presumably of his wife's, knowledge of relevant facts. He previously submitted his own affidavit in opposition to the Center's first summary judgment motion, Record Doc. No. 31-1, but he did not provide his own affidavit in opposition to the second. His wife was listed on his witness list. Record Doc. No. 39. Plaintiff has not proffered any reason why he did not submit the facts in his own, current declaration or in his wife's declaration in opposition to either of defendant's summary judgment motions. Finley

11

"has not shown the extraordinary circumstances that would warrant relief under Rule 59(e) due to his negligent failure to present all of the available facts crucial to his case in his summary judgment declaration." Calton v. Johnson, 307 F. App'x 809, 811 (5th Cir. 2009) (citing ICEE Distribs., Inc. v. J & J Snack Foods Corp., 445 F.3d 841, 847-48 (5th Cir. 2006)).

Plaintiff has also failed to explain why he could not with reasonable diligence have obtained and submitted the declarations of the six former employees in timely opposition to the Center's summary judgment motions. One of the six, Lillie Wheat, was listed on plaintiff's own witness list. Record Doc. No. 39. Defendant points out that Wheat has filed two employment-related lawsuits against the Center in this court using the same attorney as Finley. Her most recent action was filed on December 18, 2012, nine months after plaintiff filed the instant lawsuit, eleven days after the attorney enrolled as Finley's counsel and one month before Finley's memorandum in opposition to the first summary judgment motion was due. Lillie D. Wheat v. Florida Parishes Juvenile Detention Comm'n, Civil Action No. 12-2989. Thus, Wheat's knowledge of the facts in Finley's case and her status as a witness for him were presumably known to him personally or his attorney as his agent well before his memoranda in opposition to defendant's two summary judgment motions were due.

The other five declarants, although not listed on either party's witness list, are all former employees of the Center who worked there during Finley's tenure. Plaintiff offers no explanation for failing to obtain their declarations in time to oppose either of the summary judgment motions. Finley also obviously had the pages from the employee handbook in his possession, as some of them were attached to his original complaint.

The facts that plaintiff now seeks to add to his summary judgment oppositions were available to him during the course of this lawsuit. He has not shown any reason why he failed to submit the evidence before the court ruled on the motions. A party's mere assertion that he "requires more time to 'investigate, assemble evidence and present the same to the court'" is insufficient "to show that the [Rule 59(e)] motion was necessary to prevent manifest injustice." McGillivray, 360 F. App'x at 537. "An unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." Templet, 367 F.3d at 479.

Finley has therefore failed to show that the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence.

C.   Plaintiff's "New" Evidence Is Merely Cumulative and/or Probably Would Not Have Changed the Outcome

Even if Finley had diligently pursued and actually <u>newly</u> discovered the evidence he now submits, the evidence would not have changed the outcome of defendant's summary judgment motions as to any of his claims for which he seeks reconsideration.

1.   <u>Plaintiff's Race and Gender Discrimination Claims</u>

The court granted the Center's first motion for (partial) summary judgment and dismissed plaintiff's claims of disparate treatment based on his race and gender. The facts in Finley's proffered new evidence are either cumulative of the facts that the court already considered when deciding defendant's summary judgment motion and/or raise no disputed issues of <u>material</u> fact. Thus, the new evidence would not change the outcome of the summary judgment motion.

Finley's new declaration, the declarations of his former co-workers and McDonald's deposition testimony add nothing material to the summary judgment evidence regarding defendant's reason for terminating plaintiff's employment. In ruling on the Center's first summary judgment motion, the court did <u>not</u>, as Finley contends, "fail[ ] to realize that the plaintiff contradicted McDonald's statement." Record Doc. No. 62-10 at p. 7. Plaintiff's opposition  memorandum, his affidavit and the materials attached to his complaint, which were submitted in opposition to the motion, clearly stated that he denied at the time and continues to deny that he made any inappropriate,

sexually based comments to McDonald.  He argued in his opposition memorandum that McDonald had fabricated her story and that her credibility was a material disputed fact issue.  The court so stated in its original ruling.  Record Doc. No. 37 at pp. 3, 7-8, 16.

Contrary to Finley's rehashed argument in the instant motion, as the court already found in granting summary judgment to the Center, plaintiff's denial that he made the remarks to McDonald and his attempt to put McDonald's credibility at issue do <u>not</u> create genuine issues of <u>material</u> fact and do <u>not</u> satisfy <u>his burden</u> of rebutting the Center's legitimate, nondiscriminatory reasons for terminating his employment.   Whether McDonald was lying when she accused him or whether Finley was telling the truth when he denied to the Center that he made the comments are <u>not</u> relevant questions of material disputed fact for purposes of the subject motions.

Rather, the question at the third stage of the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), burden-shifting framework is whether Finley can carry his "ultimate burden" to produce competent <u>evidence</u> that the Center's Executive Director, Tom Jarlock decided to terminate Finley on October 27, 2011 <u>as a pretext</u> for race or gender discrimination, rather than for the Center's stated legitimate reason.  <u>Dailey v. Whitehorn</u>, No. 12-30984, 2013 WL 4446800, at *1 (5th Cir. Aug. 21, 2013) (citing <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 557 (5th Cir. 2007)).  Jarlock had both McDonald's and Finley's versions of the events during his investigation and, based on

the information that he had, he obviously resolved any credibility conflict against Finley. Plaintiff has come forward with no evidence to rebut the Center's legitimate reason, either at the time summary judgment was granted or now.

"[A]nti-discrimination laws are not vehicles for judicial second-guessing of business decisions." Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001) (quoting Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 281 (5th Cir. 1999)); accord Moss v. BMC Software, Inc., 610 F.3d 917, 926 (5th Cir. 2010). It is immaterial whether the Center's decision to terminate Finley may have been based on incorrect facts, so long as its decision was not motivated by discriminatory or retaliatory animus. Id.; Mato, 267 F.3d at 452. Thus, the Fifth Circuit has "emphasize[d] . . . that a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith." Cervantez v. KMGP Servs. Co., 349 F. App'x  4, 10 (5th Cir. 2009) (citing Waggoner v. City of Garland, 987 F.2d 1160, 21 1165 (5th Cir. 1993)) (emphasis added). "Even if evidence suggests that a decision was wrong, [the court] will not substitute our judgment . . . for the employer's business judgment." Scott v. Univ. of Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).

> [Plaintiff's] denial of wrongdoing, standing alone, is insufficient to create
> a fact issue.  In cases in which an employer discharges an employee based

on the complaint of another employee, the issue is not the truth or falsity of the allegation, but <u>whether the employer reasonably believed the employee's allegation and acted on it in good faith</u>.

<u>Reed v. Neopost USA, Inc.</u>, 701 F.3d 434, 440 n.4 (5th Cir. 2012) (quotation and citations omitted) (emphasis by the Fifth Circuit).

Thus, even if it were now proved that Finley did not make the sexually oriented remarks to McDonald in October 2011, that fact would be insufficient to rebut defendant's competent summary judgment evidence that Jarlock investigated fully at the time of the incident and decided, reasonably and in good faith, that Finley had violated the Center's policies and should be terminated.  Plaintiff has produced no competent evidence to suggest that Jarlock's reason was false or unworthy of credence.

The Fifth Circuit's decision in <u>Jackson</u> is on point.  In that case, plaintiff Jackson's female co-worker complained that Jackson had made sexually oriented comments "that made her 'uncomfortable' . . . and [that Jackson] had 'on many occasions' made inappropriate statements or comments in front of her and her female coworkers." <u>Jackson</u>, 602 F.3d at 376.  An upper manager and an outside attorney investigated the complaint by interviewing the people involved, including plaintiff.   After the investigators concluded that the allegations were true, defendant Cal-Western fired Jackson for violating its sexual harassment policy.  <u>Id.</u>

The district court assumed without deciding that Jackson could establish a prima facie case of age discrimination, found that the employer had met its burden to produce a legitimate reason for the termination, and granted summary judgment to defendant because Jackson failed to meet his burden to "show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Id. at 378-79 (quotation and citations omitted).  The Fifth Circuit affirmed, holding that

> Jackson's self-serving statements that he did not commit sexual harassment are insufficient to create a triable issue of fact as to whether Cal-Western fired him because of his age.  In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but "whether the employer reasonably believed the employee's allegation and acted on it in good faith." Cal-Western was faced with considerable evidence that Jackson was violating the company's sexual harassment policy . . . , [which] was substantiated by both an internal and external investigation of Jackson's behavior.  Jackson has presented no evidence as to why the company's reliance on the evidence against him was in bad faith.  His own conclusory assertion that he did not behave inappropriately is irrelevant, since he has provided no evidence to suggest that Cal-Western's decision to trust the results of the two investigations, rather than his self-serving denial of wrongdoing, was unreasonable or in bad faith.  Jackson's assertion of innocence alone does not create a factual issue as to the falsity of Cal-Western's proffered reason for terminating him.

Id. at 379 (emphasis added); see also Reed, 701 F.3d at 440 n.4 ("Reed's denial of wrongdoing, standing alone, is insufficient to create a fact issue."); Waggoner, 987 F.2d at 1166 ("To the extent that Waggoner's summary judgment evidence relates to his

innocence of the sexual harassment charge, it is irrelevant" because the employer's bad faith is the issue.); Anderson v. McDonald's Restaurants of La., Inc., No. 11-992, 2012 WL 5878731, at *5-6 (E.D. La. Nov. 21, 2012) (quoting Amezquita v. Beneficial Texas, Inc., 264 F. App'x 379, 386 (5th Cir. 2008) (citing Cervantez, 349 F. App'x at 10) (After defendant's investigation confirmed that plaintiff had sent harassing text messages to co-worker, defendant terminated plaintiff.  "[W]hether McDonald's was wrong to believe that Anderson sent the text messages 'is irrelevant, as [e]ven an employer's incorrect belief in the underlying facts–or an improper decision based on those facts–can constitute a legitimate, non-discriminatory reason for termination.'"  Plaintiff "has not submitted any evidence, beyond her own testimony denying that she sent the text messages, that McDonald's did not act in good faith and did not reasonably believe she sent the texts. A plaintiff cannot establish pretext solely by presenting her own testimony."); Becerra v. Ms. Ellie's Kitchen, No. 11-1833, 2012 WL 5363793, at *7 (E.D. La. Oct. 31, 2012) (citing Jackson, 602 F.3d at 379) (quoting Armstrong v. Boehringer Ingelheim Pharm., Inc., No. 3:08-CV-1458-O, 2010 WL 2540751, at *7 (N.D. Tex. June 21, 2010)) ("plaintiff's assertions that he did not yell at the other employees or steal from defendant do not undermine defendant's proffered reasons for his firing because a 'bald, self-serving denial of wrongdoing does not suffice to rebut Defendant's [good faith] belief.'")).

19

Finley relies on Parker v. State of La., 323 F. App'x 321 (5th Cir. 2009). However, that decision does not establish a rule of law, as Finley argues, that his mere denial of the factual reasons for his termination creates a material disputed fact issue as to whether defendant's reasons were pretextual.  The particular facts and evidence in Parker were sufficient to meet plaintiff's burden to survive a summary judgment motion, but those facts differ distinctly from Finley's case.

In Parker, plaintiff was employed by the Louisiana Department of Education to teach at a state correctional facility.  Based solely on a report by Parker's immediate supervisor, the Deputy Warden banned Parker from the facility for having violated the correctional center's security policy.  Parker's employment was then terminated because she could not go to work at the correctional facility as a result of the ban.  Defendant proffered plaintiff's security violation as a legitimate, nondiscriminatory reason for having terminated her employment.

Parker testified at her deposition that she left her beeper in her supervisor's office. This sworn testimony contradicted her supervisor's report to the Deputy Warden that the supervisor found Parker's beeper in an area next to the supervisor's office to which inmates had access, which posed a security threat.  Parker alleged that her supervisor fabricated the violation as a pretext to have her fired.  There was no independent investigation of plaintiff's alleged violation.  The Deputy Warden who banned Parker

from the correctional facility simply accepted the supervisor's report as true.  This made possible an inference that the supervisor improperly influenced the Deputy Warden, who became a "cat's paw" for the supervisor, thus preserving the causal link between the supervisor's allegedly discriminatory motives and the adverse employment action. Parker also presented evidence that other employees had been treated more favorably in similar circumstances.  Id. at 324, 328.  In these circumstances, the Fifth Circuit found that Parker's evidence raised a question of material fact that could not be resolved on summary judgment because the court is "not permitted to make a credibility assessment of the competing stories regarding the beeper incident."  Id.

In the instant case, Finley was accused of inappropriate comments by a subordinate, McDonald, not by a supervisor who would have any input or influence on the Center's disciplinary decision.  McDonald promptly reported her discomfort with plaintiff's comments to her own supervisor, Donald Carter.  When Carter reported the incident to his superiors, there was an independent investigation by upper management, during which McDonald, Finley, Carter and another employee, Joy Chauvin, documented in writing the events they had observed.  The Center's Executive Director, Jarlock, was the ultimate decisionmaker.  He made his own credibility determination in favor of McDonald's complaint and against Finley's version of the events.

Nothing in plaintiff's new evidence raises any inference that Jarlock's reason for terminating plaintiff was unworthy of belief or a pretext for discrimination. McDonald's deposition testimony is merely cumulative of the complaint that she made regarding Finley's conduct. The declarations of Wheat and Taylor that they were present during the training session on October 13, 2011 and did not hear Finley make any sexual comments to McDonald have no probative value that the comments were not made, particularly when the evidence shows that McDonald said that Finley whispered the comments to her. The declarations of Smith, Taylor, McLin and Jackson that they never heard Finley make inappropriate sexual comments during <u>other</u> training sessions or at other times are irrelevant. The comments allegedly made at unspecified times by Smith's husband, Operations Manager Russell Sanders and other employees of the Center, which Finley, Smith, Olmstead, McLin and Jackson report in their declarations, are both irrelevant and/or inadmissible hearsay. Fed. R. Evid. 801.

Finley has produced <u>no evidence</u> that any white or female employees were treated more favorably in similar circumstances, <u>Jackson</u>, 602 F.3d at 378, nor has he created any material fact issue in dispute "'that the employer's proffered explanation is false or "unworthy of credence."'" <u>Id.</u> at 378-79 (quoting <u>Laxton v. Gap, Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000))).

Plaintiff's "motion to alter or amend the judgment merely recapitulated his prior arguments and claims, while accusing the district court and Defendants of improper conduct."  McAlpine v. Porsche Cars N. Am. Inc., 428 F. App'x 261, 267 (5th Cir. 2010).  Such arguments are insufficient to support the extraordinary relief that Finley seeks.  Accordingly, his motion for a new trial on his race and gender discrimination claims is denied.

2.      Plaintiff's Defamation Claim

Finley claims that defendant published to third parties defamatory statements consisting of McDonald's allegedly false accusation, the fact that the Center terminated his employment and the reason for his termination.  In his motion for new trial, he argues that the court erred by finding that he had no evidence of publication, one of the required elements to establish a defamation claim under Louisiana law.

The elements of defamation are "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."  Costello v. Hardy, 864 So. 2d 129, 139-40 (La. 2004) (citation omitted) (emphasis added).  "[S]tatements made between employees in the course and scope of their employment are not statements communicated or publicized to third persons so as to constitute publication for a defamation claim."

<u>McDaniels v. Hotel Parking Mgmt., Inc.</u>, No. 2010-0266, 2010 WL 8972216, at *3 (La. App. 4th Cir. June 16, 2010) (emphasis added).

Although Finley provided <u>no</u> evidence of publication of the allegedly defamatory statements to third parties with his opposition to defendant's summary judgment motion, he argues that he can <u>now</u> produce such evidence.  In support of his argument, he has attached the declaration of his wife, Shannon Finley, Record Doc. No. 62-5, and he cites his supplemental response to the Center's Interrogatory No. 2, which he previously filed in the record in response to defendant's motion to compel.  Record Doc. No. 58-1.

Plaintiff's supplemental answer to Interrogatory No. 2 adds nothing to the competent summary judgment evidence.  First, the answer is inadmissible because it is not signed and verified under oath by Finley, as required by Fed. R. Civ. P. 33(b)(1)(A) and (b)(3). "[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial."  <u>Bellard v. Gautreaux</u>, 675 F.3d 454, 460 (5th Cir. 2012).  The supplemental answer signed only by plaintiff's attorney is not evidence.

Second, the answer identifies Leslie Gardner, Joyce Jackson and Demetrius Wright as "publication witnesses."  Record Doc. No. 62-10 at p. 12.  However, Finley's supplemental answer to Interrogatory No. 2 does not state who these witnesses are, how they are related or not related to the Center, or the circumstances and time frame in which

they had the conversations summarized in the answer.  Plaintiff has not identified those relationships or circumstances in his memorandum in support of his motion for new trial. The court therefore has no idea whether any of these persons worked for the Center or were third parties or what the circumstances of their conversations were, all of which would be relevant to determining whether Finley has evidence to support the element of publication in his defamation claim.

Third, plaintiff's supplemental answer to Interrogatory No. 2 states that Jackson will testify that she told Gardner and Wright the reasons why the Center terminated Finley's employment, that Gardner and Wright will testify about what Jackson told them and that Wright will testify concerning the conversation she had with Shannon Finley after Wright had spoken with Jackson.  However, the identification of witnesses and the expected substance of their testimony is <u>not evidence</u> of any facts.  Plaintiff has not produced sworn affidavits or deposition testimony from any of these witnesses.  The court has no idea what any of them would testify under oath.  Plaintiff's supplemental answer to Interrogatory No. 2 is not evidence that would change the outcome of defendant's summary judgment motion.

As to Mrs. Finley's declaration, she states that she has no business or employment relationship with the Center and that Wright told her that the Center had fired plaintiff for sexual harassment.  She does <u>not</u> say whether she had already learned this

information from her husband or whether she first heard it from Wright.  Publication of the information by plaintiff himself to his wife before she heard it from Wright would not constitute publication for purposes of a defamation claim.  Bellard, 675 F.3d at 465.

Even if the court assumes without deciding that plaintiff's wife heard the information from Wright first, her testimony is still insufficient to change the outcome. Plaintiff argues that "[t]he only way Demetrius Wright could have learned that Finley had been fired by the Center would be for a Center employee to have told someone who had no 'need to know.'  The Center is the author of the accusation and the Center is responsible for every re-publication."  Record Doc. No. 62-10 at p. 13.  This argument rests on speculation and misstates the law.

First, plaintiff has not provided enough information to ascertain whether Wright's statement to Mrs. Finley is admissible.  Wright's relationship to the Center at any time, but particularly when she allegedly made the statement to Mrs. Finley, is unknown. Wright's statement to Mrs. Finley might be an admissible, non-hearsay statement of a party opponent if Wright was a representative of the Center at the time she made the statement.  Fed. R. Evid. 801(d)(2)(A), (C), (D).  However, if Wright was not a representative of the Center when she spoke to Mrs. Finley, plaintiff's attempt to present his wife's testimony about what she heard from Wright "is textbook hearsay" because he is trying to use his wife's "recollection of what someone else[, not the defendant,]

said" to prove that defendant published the allegedly defamatory statement.  Bellard, 675 F.3d at 461.  "This is hearsay and does not fit any hearsay exception."  Id.

Even if the statement is not hearsay, the Center is not strictly liable under Louisiana law for all republication of a defamatory statement, contrary to defendant's contention.  "While generally an 'original author of a libelous publication is not to be held liable for the voluntary republication of it by others,' the original author will be held liable if 'the republication is the natural and probable consequence of the defendant's act.'"  Ioppolo v. Rumana, No. 06-193-JJB, 2012 WL 4960385, at *5 (M.D. La. Oct. 16, 2012) (quoting Wiggins v. Creary, 475 So. 2d 780, 782 (La. App. 1st Cir. 1985)) (emphasis added); accord Wells v. Liddy, 186 F.3d 505, 530 (4th Cir. 1999) (citing Wiggins, 475 So. 2d at 782; Giordano v. Tullier, 139 So. 2d 15, 19 (La. App. 4th Cir. 1962)); Cormier v. Lafayette City-Parish Consol. Gov't, No. 6:09-cv-00703, 2013 WL 4067905, at *8 (W.D. La. Aug. 12, 2013) (citing Martin v. Lincoln Gen. Hosp., 588 So. 2d 1329, 1333 (La. App. 2d Cir. 1991); Wattigny v. Lambert, 408 So.2d 1126 (La. App. 3d Cir. 1981); Giordano, 139 So. 2d at 19).

Whether a republication is the natural and probable consequence of defendant's act is a question of fact.  Davis v. Nat'l Broad. Co., 320 F. Supp. 1070, 1072 (E.D. La. 1970), aff'd, 447 F.2d 981 (5th Cir. 1971) (citing Cormier v. Blake, 198 So. 2d 139 (La. App. 3d Cir. 1967); Giordano, 139 So. 2d at 19); accord Ioppolo, 2012 WL 4960385,

at *6.  "Where there were circumstances, known to the original defamer at the time of his publication that might reasonably lead him to expect a repetition, he is responsible for it."  Davis, 320 F. Supp. at 1072.

There is no evidence in the record of how Wright learned the information that she allegedly told Mrs. Finley.  It is plaintiff's burden to show that Wright's communication to Mrs. Finley was the natural and probable consequence of the Center's own actions. By stating that "[t]he only way Demetrius Wright could have learned that Finley had been fired by the Center would be for a Center employee to have told someone who had no 'need to know,'" Finley has presented nothing but speculation, which is insufficient to carry his burden.

Thus, plaintiff's "new" evidence would not change the outcome of defendant's second summary judgment motion and does not justify the extraordinary relief of altering or amending the judgment on his defamation claim.

### 3.   Plaintiff's Due Process Claim

The Center's second motion for summary judgment sought "dismissal of all of the remaining claims made by plaintiff, i.e., the disparate impact claim under Title VII and all state law claims based on defamation, intentional infliction of emotional distress and breach of contract."  Record Doc. No. 44-1 at p. 1 (emphasis added).  Defendant's motion and memorandum did not specifically mention plaintiff's due process claim.

Defendant moved for leave to file a second reply memorandum on March 21, 2013, Record Doc. No. 51, and the court granted the motion on March 25, 2013.  Record Doc. No. 56.  The Center argued in this memorandum that Finley cannot maintain a due process claim because, as an at-will employee, he had no property interest in his continued employment.  Record Doc. No. 57.  The second reply memorandum did not present any new evidence, but relied exclusively on the evidence already in the record.

On April 3, 2013, the court granted summary judgment on the due process claim along with the rest of plaintiff's claims.  The court noted that the Center had moved for summary judgment on <u>all</u> of plaintiff's remaining claims.  As to the Center's failure to discuss the due process claim specifically until its second reply memorandum, the court stated:

> As a matter of law, in the absence of any evidence that he had an employment contract, Finley cannot establish that he had a protected property interest in continued employment, such that any particular process was due to him.  Therefore, the court does not find it necessary to give plaintiff additional time to respond to defendant's arguments regarding this claim.

Order and Reasons on Motion, Record Doc. No. 60, at p. 27.

Finley argues that this was manifest error and that his "first indication that the Court was considering summary judgment on the due process claim came in the Order and Reasons on Motion."  Record Doc. No. 62-10 at p. 9.  He contends that the court

29

should have given him an opportunity to respond to what he calls defendant's "third motion for summary judgment masquerading as a Second Reply Memorandum."  Id.

Plaintiff also argues that the court did not understand his claim and should have given him time to amend his complaint or file a Rule 7 reply to set forth his claim more specifically.  In his memorandum in support of his motion for new trial, he states that he explained his due process claim in his opposition to defendant's first motion for summary judgment and that his claim consists of "an alleged violation of 42 U.S.C. § 1983 and the Fourteenth Amendment's prohibition against deprivation of property, i.e., continued employment, without due process of law."  Id.  Finley alleges that the court disregarded his statement in his complaint that defendant had "represented . . . both orally and in writing that an employee would only be discharged for cause, and after a reasonable investigation and opportunity to be heard."  Id. at p. 10.  He argues that the new evidence he has submitted, consisting of Wheat's declaration, a letter attached to her declaration, and nine pages from the Center's employee handbook, establishes a material fact issue that defendant "abrogated its right to terminate the plaintiff without cause and that is sufficient to withstand summary judgment on the due process claim."  Id. (emphasis in original).  Citing Bledsoe v. City of Horn Lake, 449 F.3d 650, 652 (5th Cir. 2006), he contends that "the same facts [as alleged in his complaint] support a § 1983 'stigma-plus-infringement' claim."  Record Doc. No. 62-10 at p. 11.

First, plaintiff did not file <u>anything</u> in response to defendant's second reply memorandum, such as a motion for leave to file a supplemental opposition memorandum, a motion for extension of time to respond, a motion to strike the memorandum or a motion to amend his complaint. He had actual notice that the Center was seeking summary judgment on his due process claim, even if he thought the method was procedurally improper. The court did not rule on the Center's summary judgment motion until 13 days after defendant's second reply memorandum was filed. Thus, Finley had time to make some kind of response before the court ruled.

Second, the court understood and addressed the due process claim that plaintiff actually brought based on his alleged property interest in continued employment. <u>See</u> Order and Reasons, Record Doc. No. 60 at pp. 26-31. The court did not address any "§ 1983 'stigma-plus-infringement' claim" that Finley might have thought about bringing, but never moved to assert. When the Center filed its second reply memorandum on March 21, 2013, the final pretrial conference was scheduled for April 18 and the jury trial was set for April 29, 2013. It is extremely unlikely that the court would have granted a motion to amend the complaint at that date under the good cause standard of Fed. R. Civ. P. 16(b)(4), long after the deadline to amend pleadings had passed, when plaintiff had known all of the underlying facts since he filed his original complaint and one trial continuance had already been granted. There can be neither

manifest error nor manifest injustice in failing to consider a claim that Finley never brought.

Even if the alleged facts warranted bringing a stigma-plus-infringement claim for deprivation of an alleged "Fourteenth Amendment liberty interest based on the [Center's] denial of a name-clearing hearing," Bellard, 675 F.3d at 461, and if the court had been on notice that Finley asserted this type of claim, which it was not, he has not produced any admissible evidence of publication of the stigmatizing charges, for the same reasons explained above in connection with his defamation claim.   As with defamation, publication is one of the necessary elements of a stigma-plus-infringement claim.  Id. at 462 (quoting Bledsoe, 449 F.3d at 653) ("'The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.'").

In addition, none of the allegedly new evidence would change the court's finding that Finley did not have an employment contract, could be discharged at will and had no property interest in continued employment.

> "Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge."  In the case of ambiguity as to the nature of the employment, Louisiana courts have

> construed in favor of at-will employment. . . .   Absent an employment
> contract, [plaintiff] was an at-will employee who could be dismissed at any
> time for any reason or for no reason.

Stewart v. Courtyard Mgmt. Corp., 155 F. App'x 756, 758 (5th Cir. 2005) (quoting

Robinson v. Healthworks Int'l, L.L.C., 837 So. 2d 714, 721 (La. App. 2d Cir. 2003))

(citing Gilbert v. Tulane Univ., 909 F.2d 124, 125 (5th Cir. 1990); Thorns v. Monroe

City Sch. Bd., 542 So. 2d 490, 492 (La. 1989)).

Finley cites no specific language in the nine (9) pages of the employee handbook

that he submitted with his motion for new trial to support his contention that he was not

an at-will employee for purposes of his due process claim.  Although it is not this court's

"duty to sift through the pleadings on file in order to find something to support

[plaintiff's] opposition to" defendant's summary judgment motion, Centerpoint Energy

Houston Elec. LLC v. Harris County Toll Rd. Auth., 246 F. App'x 286, 290 (5th Cir.

2007) (citing de la O v. Hous. Auth. of El Paso, 417 F.3d 495, 501 (5th Cir. 2005), I have

reviewed all the pages that Finley submitted.  This evidence does not in any way support

his argument that the Center abrogated his at-will status or that the handbook creates a

property interest in continued employment.  Nothing in the handbook pages creates a

conflict with Jarlock's affidavit submitted with defendant's second motion for summary

judgment, Record Doc. No. 44-3, which establishes that Finley had no employment

contract and his employment was at-will.

Finley has submitted <u>no</u> evidence to support his contention that defendant promised orally and in writing that an employee would only be discharged for cause and after a reasonable investigation and opportunity to be heard.  Nonetheless, the summary judgment evidence, including plaintiff's own evidence, establishes that he was discharged for cause and after a reasonable investigation and opportunity to be heard. The court's order stated these facts and cited the record evidence.  Order and Reasons on Motion, Record Doc. No. 60 at pp. 30-31.

Plaintiff also relies on Wheat's declaration, in which she states that she received a pre-termination letter from the Center and was given an opportunity to respond in writing and to appear at a hearing to review the video of and witness statements regarding the events for which discipline was being contemplated and "to give reason as to why she should not be disciplined, up to and including termination."  Letter from Executive Director Jarlock to Tom Hogan (Wheat's attorney), Record Doc. No. 62-2 at p. 3.  However, neither the employee handbook nor the Center's use of this procedure in Wheat's case establishes that all employees have a right to that particular form of process.  It appears from the limited information in Wheat's declaration and Jarlock's letter that she was suspended without pay pending an investigation of some kind of "egregious . . . offenses committed by Mrs. Wheat" at work and that she had an attorney at the time.  <u>Id.</u>  Thus, it appears that a somewhat formal hearing was scheduled

Finley's case was different in that he was allowed to continue working pending the investigation of McDonald's complaint.  However, like Wheat, Finley had both an opportunity to submit a written statement and to discuss the allegations against him at two pre-termination meetings with his superiors, including Jarlock, the final decision maker.  The evidence attached to his complaint confirms that he was given an opportunity to explain why he should not be terminated.

Finley has submitted no new evidence that would change the facts, law or reasoning stated in the court's ruling on his due process claim.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that plaintiff's motion for new trial is DENIED.

New Orleans, Louisiana, this ____30th____ day of August, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

35